# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SHAWN SCHIERTS,
              **Plaintiff,**

      v.                                                  Case No. 10-C-0657

**CITY OF BROOKFIELD and**
**BART ENGELKING,**
              **Defendants.**

## DECISION AND ORDER

Shawn Schierts brings this action under the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721–2725, against Bart Engelking and the City of Brookfield. The DPPA makes it unlawful for any person to knowingly obtain or disclose personal information from a motor-vehicle record for a purpose not permitted by the Act. See 18 U.S.C. § 2722(a). The DPPA allows an individual whose personal information has been obtained or disclosed in violation of the Act to bring a civil action against the person who committed the violation. See 18 U.S.C. § 2724(a). In this case, Schierts alleges that Engelking, while on duty as a City of Brookfield police officer, obtained Schierts's addresses from motor-vehicle records and disclosed them to Schierts's ex-girlfriend, Sarah Pretzel, for a purpose not authorized by the Act. Schierts's also alleges that the City of Brookfield is liable for Engelking's conduct. Before me now is Schierts's motion for partial summary judgment.

## I. BACKGROUND

Schierts dated Sarah Pretzel from May 1999 until the summer of 2003. The couple had a child together, and during the times relevant to this suit Pretzel had primary physical

custody. Schierts lived in Arizona, but on August 13, 2009, he visited Wisconsin and went to a daycare facility in Brookfield to see the child. Pretzel was at the facility, and she and Schierts became involved in a dispute over the child's custody. Someone at the daycare facility called the police. Engelking, who was at that time an officer with the City of Brookfield police department (he has since resigned), responded to the call and assisted in resolving the dispute. Pretzel and Engelking did not know each other prior to Engelking's responding to the call, but they continued to communicate with each other about Schierts after the events at the daycare facility had been resolved.

At the end of August and beginning of September 2009, Schierts sent emails to Pretzel concerning the care and custody of their son. Pretzel forwarded these emails to Engelking, and Engelking responded by offering Pretzel advice. In one of their email communications, Pretzel told Engelking that she wondered what Schierts's current address was. Engelking wrote that he thought he could find the address and that he would try to do so once he got back to work. On September 2, 2009, Engelking wrote an email to Pretzel and stated that he had found two addresses for Schierts, one in Nevada and one in Arizona. After giving Pretzel the addresses, Engelking wrote, "You didn't get this info from me." Engelking was on duty on September 2, 2009. Records from the Arizona Department of Transportation show that on that date there was a request for information from Schierts's motor-vehicle records that originated from the Brookfield Police Department.

After Engelking provided Schierts's addresses to Pretzel, Schierts accessed Pretzel's email account and saw what had transpired. Schierts copied Pretzel's emails and

2

sent them to his mother and his attorney, who initiated legal proceedings against Engelking and the City of Brookfield under the DPPA.

On November 12, 2009, Engelking sent an email to Pretzel asking her to call him. Pretzel sent an email in response in which she said she was unavailable at the moment and asked Engelking whether everything was okay. Engelking replied: "Not really. Was served with papers today . . . I'm being sued by Shawn and I wanted to asked [sic] you if you ever told him that you got his home address from me." On November 16, 2009, Engelking wrote an email to Pretzel in which he stated that he was glad that the two of them were "on the same page that I didn't give you Shawn's address and that you got it from Child Service."

When Engelking was deposed in this case and asked whether he had obtained Schierts's addresses from a motor-vehicle record, he asserted his Fifth Amendment privilege against self-incrimination. When Pretzel was deposed, she testified that Engelking provided her with the addresses.

## II.  DISCUSSION

**A.  Liability of Engelking**

Schierts moves for summary judgment on the issue of Engelking's liability under the DPPA. Schierts's addresses constituted "personal information" protected by the DPPA, see 18 U.S.C. § 2725(3), and there is no dispute that if Engelking obtained Schierts's addresses from a motor-vehicle record, he did so for an impermissible reason, see 18 U.S.C. § 2721(b) (listing permissible uses of personal information). The evidence that Engelking did obtain Schierts's addresses from a motor-vehicle record is overwhelming.

3

The emails between Engelking and Pretzel show that Pretzel told Engelking that she wanted to know Schierts's address. Engelking stated he would look into it when he got back to work. The next day, during a time when Engelking was on duty, the Arizona Department of Transportation received a request from the Brookfield police department for information from Schierts's motor-vehicle records. That same day, Engelking wrote an email to Pretzel in which he disclosed Schierts's addresses to her and told her that she did not get them from him. After Schierts initiated legal proceedings under the DPPA, Engelking and Pretzel agreed that Pretzel would say that she obtained the addresses from Child Services. However, Pretzel admitted at her deposition that she actually obtained the addresses from Engelking. In light of this evidence, no reasonable jury could fail to find that Engelking violated the DPPA. See Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 660 (7th Cir. 1991) (en banc) ("[I]f no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment—if in other words the movant would be entitled to judgment notwithstanding the verdict if the case did go to trial before a jury and he lost—then summary judgment must be granted.").

The defendants, however, argue that Schierts is not entitled to summary judgment because he obtained Pretzel's emails in violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712. The SCA makes it unlawful to, without authorization, intentionally access an electronic-communication service or intentionally obtain an electronic communication while it is still in storage. The defendants argue that Schierts did not have Pretzel's permission to access her email account and that therefore Schierts violated the SCA. The defendants further argue that I should use my inherent powers to

sanction Schierts for this violation, and that the appropriate sanction is dismissal of Schierts's lawsuit in its entirety. Defendants argue that the sanction of dismissal is appropriate because Schierts would never have discovered Engelking's DPPA violation if he had not illegally accessed Pretzel's email account.

Schierts denies that he did not have permission to access Pretzel's email account. He contends that she gave him her password and consented to his reading her emails. However, Schierts does not deny that there is a genuine factual dispute over whether he had Pretzel's consent to read her email. Still, this factual dispute will not prevent me from entering summary judgment in Schierts's favor because, even if he did violate the SCA, I would decline to exercise any inherent power I might have to sanction him for this violation. The SCA has its own penalties, including fines, imprisonment, and civil liability, see 18 U.S.C. §§ 2701(b) & 2707, and I see no need to create an additional penalty by preventing Schierts from using the information he obtained to support his claims in this action. Although it is ironic that Schierts is supporting a claim based on an invasion of privacy with evidence that he may have obtained in violation of Pretzel's privacy rights, Schierts's claim is against Engelking and the City, not Pretzel. Schierts did not invade Engelking's or the City's privacy rights, and there is no reason why they should benefit from Schierts's alleged wrongdoing. Indeed, barring Schierts from pursuing his case against Engelking and the City because of his conduct towards Pretzel would have its own irony—I would be creating a remedy to enforce one federal statute (the SCA) that has the effect of inhibiting enforcement of another (the DPPA). Thus, the interests of justice are best served by allowing Schierts to proceed with this case and leaving it to Pretzel to bring her own lawsuit

under the SCA against Schierts, if she thinks that that is appropriate. Accordingly, Schierts's motion for summary judgment on the issue of Engelking's liability will be granted.

**B.     Liability of City of Brookfield**

Schierts also moves for summary judgment on the issue of the City of Brookfield's liability under the DPPA. He argues that the City is vicariously liable for Engelking's violation because Engelking acted with apparent authority. The City argues that it is not liable for Engelking's violation because the DPPA does not impose vicarious liability. The City also argues that even if the DPPA imposes vicarious liability in general, it does not impose vicarious liability on a municipality when the violation was not caused by a municipal policy, practice or custom.

Both of the City's arguments were rejected by the district court in Margan v. Niles, 250 F. Supp. 2d 63 (N.D.N.Y. 2003). In that case, the court found that a municipality was vicariously liable for a DPPA violation committed by one of its police officers because the officer acted with apparent authority. The court noted that the DPPA created a form of tort liability, and that the Supreme Court has held that "'[w]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.'" Id. at 74 (quoting Meyer v. Holley, 537 U.S. 280, 285 (2003)). The court found that nothing in the DPPA indicated that Congress did not intend for ordinary vicarious-liability rules to apply in DPPA cases, and thus it held that the DPPA imposed vicarious liability. Id. at 74–75. The court also held that municipalities could be held vicariously liable under the DPPA even if the violation was not committed pursuant to a municipal policy, practice or custom. Id. at 75. At least

6

one other court has agreed with Margan.  See Menghi v. Hart, 745 F. Supp. 2d 89, 98–99 (E.D.N.Y. 2010).

I, too, agree with Margan.  The DPPA creates a form of tort liability, and I see nothing indicating that Congress did not intend to incorporate ordinary tort-related vicarious-liability rules into the DPPA.  Moreover, nothing suggests that Congress intended for different vicarious-liability rules to apply to municipalities.  The City argues that Monell v. Department of Social Services, 436 U.S. 658 (1978), supports its argument that a municipality may be vicariously liable under the DPPA only if the violation was caused by a municipal policy, practice or custom.  However, the result in Monell was based on the Supreme Court's understanding of the legislative history of the Civil Rights Act of 1871, the precursor of 42 U.S.C. § 1983.  See 436 U.S. at 691 (reasoning that "the language of § 1983, read against the background of the same legislative history [i.e., the legislative history of the Civil Rights Act of 1871], compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort").  The City has not pointed to anything in the language or legislative history of the DPPA indicating that Congress intended to incorporate the limited form of municipal liability that applies in § 1983 cases into the DPPA.  Thus, I conclude that it did not and that municipalities are vicariously liable under the DPPA to the same extent as any other defendant.

Under ordinary tort-related vicarious liability rules, a principal is liable for a tort committed by an agent acting with apparent authority.  See, e.g., Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 565–66 (1982); Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998); Restatement (Third) Agency § 7.08

(2006). Here, there is no dispute that Engelking acted with the apparent authority of the City of Brookfield when he obtained Schierts's addresses from the Arizona Department of Transportation for an impermissible purpose. Thus, Engelking acted with the apparent authority of the City of Brookfield when he violated the DPPA. Accordingly, Schierts is entitled to summary judgment on the issue of the City's vicarious liability for Engelking's DPPA violation.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for partial summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on **July 11, 2012 at 3:00 p.m. CDT** for the purpose of scheduling further proceedings. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 20th day of June 2012.

     s/ Lynn Adelman
     LYNN ADELMAN
     District Judge